**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF WASHINGTON**

**AT SEATTLE**

**Rafael Molina and Hikaru Hayama,**

**Plaintiffs,**

**v.**

**CITY OF SEATTLE,**

**Defendant.**

2:24-CV-1633-RSL

**COMPLAINT FOR VIOLATION OF CIVIL RIGHTS (42 U.S.C. § 1983)**

**INTRODUCTION**

1. Plaintiffs Rafael Molina and Hikaru Hayama bring this action under 42 U.S.C. § 1983 against the City of Seattle for violating their constitutional rights. This lawsuit challenges the City's custom of imposing and maintaining no-contact orders in domestic violence cases without the input or approval of the alleged victim and prior to a determination of guilt, and lacking a proper, automatic, and timely mechanism in removing the order at the alleged victim's request, in violation of the procedural due process rights protected by the Fourteenth Amendment and the First Amendment right to freedom of association.

2. This unconstitutional handling of no-contact orders has caused the plaintiffs significant financial and emotional harm. Plaintiffs seek compensatory damages, injunctive relief, and potential attorney's fees under 42 U.S.C. § 1988.

## PARTIES

3. **Rafael Molina** is from Miami, Florida, currently residing in Miami, Florida, and was a new resident of Seattle, Washington, at the time of the events giving rise to this action. Before residing in Seattle, Rafael Molina resided in the family home of Hikaru Hayama in Japan for nearly a year. Rafael Molina has a Bachelor's in Economics and a Master's in Business Analytics, both from the University of Miami.

4. **Hikaru Hayama** is from Osaka, Japan, currently residing in Miami, Florida, with her husband Rafael Molina, and was a new resident of Seattle, Washington, at the time of the events giving rise to this action. Hikaru Hayama has a Bachelor's in Sociology from Kansai University. She is not a U.S. citizen.

5. **City of Seattle** is a municipal corporation located in Washington State. The City is responsible for the actions of its prosecutors, law enforcement officers, and any policy or practice instituted by its government.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343 because this action arises under federal law, specifically 42 U.S.C. § 1983.

7.  Venue is proper in this District under 28 U.S.C. § 1391 because the events giving rise to this action occurred in Seattle, Washington, and the City of Seattle is located within the Western District of Washington.

## FACTUAL BACKGROUND

8.  On or about June 24, 2023, Seattle police were dispatched to the residence of Rafael Molina and Hikaru Hayama in response to a report of domestic violence. During individual interactions with the responding officers, both Rafael Molina and Hikaru Hayama stated that Hikaru Hayama was engaging in self-harm in response to a potential divorce and that there was no violence between them.

9.  In questioning spanning an hour and a half, at no point did Hikaru Hayama accuse Rafael Molina of violence or wrongdoing. At no point did any officers observe any red marks or cuts on Hikaru Hayama's body, instead noting bruising on her forearms like hands and one bite mark, which both plaintiffs stated multiple times she had done unto herself in distress. The plaintiffs suggested the officers call Hikaru Hayama's mother in the case they did not believe Hikaru Hayama's statements of anxiety-induced self-harm, to which they did not do. Earlier in the day, other officers attended the plaintiffs residence for similar noise complaints and found zero evidence of harm, with a female officer thoroughly inspecting Hikaru Hayam's entire body.

10. Despite these facts, under mandatory arrest policies in potential domestic violence situations, Rafael Molina was arrested without any allegations of domestic violence from the alleged victim. Days later, Hikaru Hayama would submit a request to the Office of Police Accountability to look into the bias in how the police assessed the incident of that

night, including the writing of a police report filled with ludicrous statements alleging abuse and containing multiple inaccurate insinuations masquerading as facts. After review, the director concluded the officers were in their right to arrest Rafael Molina, despite assessing "[the officer] had some evidence indicating [Rafael Molina] might ultimately be innocent", on the following reasoning: "In making this determination, [Officer] appropriately considered the apparent size differential between [Rafael Molina] and the Complainant [Hikaru Hayama], the nature and extent of the parties' injuries, and observations that suggested an unequal power dynamic." In other words, despite the plaintiff's statements, the City of Seattle thinks it is appropriate to not believe and disregard the alleged victim's own statements and allege Rafael Molina an abuser given elementary level deductions on personal characteristics and power dynamics. The city also found the officers misrepresenting Hikaru Hayama by more than 30 pounds by saying she weighed 80 pounds (the size of a middle school child), disgustingly insinuating the plaintiffs were married for Hikaru Hayama's visa, declaring Hikaru Hayama had tried to call police but couldn't (which she never said), incorrectly documenting a history of abuse when hours prior Hikaru Hayama's entire body was checked by a female officer for any potential harm, not fully documenting Hikaru Hayama's broader statements of self-harm and anxiety, incorrectly documenting Rafael Molina was directing Hikaru Hayama on what to say (which was not possible given the separated interrogations), not calling Hikaru Hayama's mother when suggested, and having a police report that was mostly incorrect insinuations as opposed to statements from the plaintiffs after an hour and a half interaction, as "minor errors,

misunderstandings, and/or imprecise estimates", and not examples of incompetence and bias in their assessment of that night..

11. The morning after the incident, at Rafael Molina's arraignment, the City of Seattle imposed a no-contact order, banning all contact, even virtual communication, between him and his wife, Hikaru Hayama, without giving Hikaru Hayama an opportunity to give her input, contest, or approve the order and despite there not being any accusations of violence by the alleged victim.

12. Hikaru Hayama appeared at the police station in the early morning, hours before Rafael Molina's arraignment, and spent hours there asking for Rafael Molina's location, release, and reiterating he had done no harm. At no point did any persons at the police station give her the opportunity to attend his arraignment.

13. This practice of imposing no-contact orders at arraignment in domestic violence cases without the alleged victim's input or approval is a routine custom of the City of Seattle.

14. The no-contact order was imposed without Hikaru Hayama's knowledge and without a dedicated and automatic process for Hikaru Hayama to contest or have a say in the order. Had she had the opportunity to contest, Hikaru Hayama would have objected to the order and would have been able to give evidence in the form of her mother's testament, as was also suggested to the police officers, that Rafael Molina helps Hikaru Hayama during those low moments and is in no way a threat to Hikaru Hayama.

15. Hikaru Hayama learned after, through her own research, that she could submit a request to rescind the order. Hikaru Hayama, immediately after learning she could, submitted a form to request a removal of the no-contact order, in which she stated her complaints about her husband's arrest, bias and ludicrousness in the police officers assessments in

the police report, and the potential financial and mental harm of the unnecessary no-contact order. A hearing to remove the order was set for 4 weeks after requesting the no-contact order to be removed.

16. The imposition and maintenance of the no-contact order caused severe emotional distress to both Rafael Molina and Hikaru Hayama, as it interfered with their marital relationship and disrupted their daily life. Hikaru Hayama's mental health severely worsened.

17. In order to care for Hikaru Hayama's worsened mental health, remain together without worry of a second arrest for Rafael Molina as a result of the no-contact order if the plaintiffs merely communicated to each other, and remove themselves from the distress imposed by the no-contact order, the plaintiffs made an abrupt decision to temporarily relocate to Hikaru Hayama's family home in Japan, in which Hikaru Hayama's mother paid for the expensive last-minute flights of both plaintiffs.

18. As a result of the temporary move to Japan, Rafael Molina lost his job, as his employer denied his request for a leave of absence and required his presence in the United States for his position.

19. Rafael Molina's loss of employment caused a permanent damage to Rafael Molina's career and caused the plaintiffs severe financial hardship. Rafael Molina and Hikaru Hayama continue to experience emotional distress and financial strain from the fall-out of the imposition of the no-contact order.

20. The plaintiffs choose to sue the City of Seattle not for the incompetence and bias of the officer's assessment of a potential domestic violence situation, but for the City of Seattle's failure to ensure a fair due process, especially in the process of stripping the plaintiffs of constitutional rights, because even in the light of an arrest which caused its

own unnecessary reputational damage to both plaintiffs, it is ultimately the overly-restrictive no-contact order that put the plaintiffs lives in disarray.

## CLAIMS FOR RELIEF

**Count 1: Violation of Fourteenth Amendment Procedural Due Process Rights**

21. Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 20 as if fully set forth herein.

22. The Fourteenth Amendment guarantees that no state shall deprive any person of life, liberty, or property without due process of law. The plaintiffs had a constitutional right to procedural due process before and after a no-contact order could be imposed, which severely limited their freedom and right to associate. The City of Seattle's custom of routinely imposing extremely restrictive no-contact orders at arraignment in domestic violence cases without input or approval from the alleged victim and without a determination of guilt, and not having an automatic, proper, and timely mechanism in which the order could be removed at the alleged victim's request, deprived the plaintiffs of their right to procedural due process.

23. The city has an interest in protecting potential victims of potential violence, but imposing unconsented and extremely restrictive no-contact orders that violate constitutional rights are not the only instrument to achieve those goals. Less restrictive measures such as counseling, mediation, or temporary physical separation without a no-contact order are all valid methods of achieving the city's interest while minimizing negative impacts to the affected.

24. The extremely restrictive no-contact order, issued without input, approval, or accusation from the alleged victim, and without a proper and timely mechanism in which it could be removed at the alleged victim's want, resulted in significant harm to Rafael Molina and Hikaru Hayama, including job loss, financial hardship, and emotional distress.

**Count 2: Violation of First Amendment Freedom of Association**

25. Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 20 as if fully set forth herein.

26. The First Amendment guarantees the right to freedom of association, including the right to maintain intimate relationships, such as the marital relationship between Rafael Molina and Hikaru Hayama.

27. The City of Seattle's routine imposition of a no-contact order at arraignment in domestic violence cases, without input or approval from the alleged victim and without a determination of guilt, and not having an automatic, proper, and timely mechanism in which the order could be removed at the alleged victim's want, unjustifiably interfered with the plaintiffs right to associate and remain together.

28. The no-contact order was imposed without consent or opportunity to contest and was enforced with a delayed hearing after Hikaru Hayama's request to remove, despite Hikaru Hayama's statement of self-harm in response to a possible divorce and that she received no harm from Rafael Molina. This violation of her freedom of association worsened her mental health and caused significant emotional distress to the plaintiffs.

**Count 3: Monell Claim – Unconstitutional Policy, Custom, or Practice (City of Seattle)**

29. Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 20 as if fully set forth herein.

30. Under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), a municipality can be held liable for constitutional violations resulting from a policy, custom, or practice.

31. The City of Seattle has a custom of routinely imposing no-contact orders at arraignment in domestic violence cases without considering the input or approval of the alleged victim, which violates the accused and the alleged victim's right to due process and freedom to associate.

32. The City of Seattle also shows deliberate indifference to violating the constitutional rights of the accused and the alleged victim, and the ramifications of violating those rights, by not having an automatic, proper, and timely mechanism to contest and remove the forced no-contact order when requested by the alleged victim.

33. The City of Seattle has continued to impose these no-contact orders despite complaints from alleged victims who request rescission of such orders, demonstrating a pattern of deliberate indifference.

34. These customs resulted in the violation of the plaintiff's procedural due process rights under the Fourteenth Amendment and freedom of association under the First Amendment.

35. The City's customs and deliberate indifference to the constitutional rights of individuals affected by its no-contact order practices makes it liable under *Monell*.

**DAMAGES**

As a result of the City of Seattle's unconstitutional actions, Plaintiffs have suffered the following damages:

- Loss of employment (Rafael Molina).

- Financial hardship, leading to bankruptcy.

- Emotional distress and mental anguish.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court grant the following relief:

A. A declaratory judgment that the City of Seattle's policies, customs, or practices violate Plaintiffs' constitutional rights under the Fourteenth and First Amendments.

B. Compensatory damages in an amount to be determined at trial, including lost wages, and emotional distress.

C. Injunctive relief prohibiting the City of Seattle from continuing its practice of requesting no-contact orders without input from the alleged victim and without procedural due process safeguards, including an expedited process for rescission of the order upon request by the alleged victim.

D. Potential attorneys' fees and costs under 42 U.S.C. § 1988.

E. Such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.

## CERTIFICATION AND CLOSING

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint:

(1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law;

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the complaint otherwise complies with the requirements of Rule 11.

**Respectfully Submitted,**

Dated: October 1, 2024

**SIGNATURES:**

Rafael Molina, Pro Se

20715 NW 38th CT, Miami Gardens, FL, 33055

rxm376@miami.edu, 786-799-0846

Hikaru Hayama, Pro Se

20715 NW 38th CT, Miami Gardens, FL, 33055

0428hikaru@gmail.com, +81 70 8352 4023